United States District Court
Southern District of Texas
**ENTERED**
April 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROGELIO  GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-19 |
| | § | |
| LORIE  DAVIS-DIRECTOR TDCJ-CID, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Rogelio Garcia is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. However, because of the serious nature of Plaintiff's claims and because of Plaintiff bringing this action in good faith, the undersigned recommends that the dismissal not be reported as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently confined at the Price Daniel Unit in Snyder, Texas.  Plaintiff's allegations arise in connection with his previous housing assignment at the Garza West Unit in Beeville, Texas.

On October 3, 2019, Plaintiff filed his original complaint in the Northern District of Texas, Lubbock Division.  (D.E. 1).  He named as the sole defendant Lorie Davis, the TDCJ's Director.  The northern district court directed TDCJ officials to file authenticated and verified copies of any and all records pertaining to Plaintiff's allegations.  (D.E. 14).  The authenticated records were originally filed in the Northern District of Texas.

On December 18, 2019, Plaintiff was granted leave to file an amended complaint.  (D.E. 18).   Plaintiff's amended complaint was filed that day, naming Director Davis as the sole defendant.  Plaintiff claims that Director Davis failed to enforce the  Prison Rape Elimination Act (PREA), which would have prevented him from being raped by inmates who had threatened him.  He seeks monetary and injunctive relief.

On January 20, 2020, Plaintiff's case was transferred to this Court.  (D.E. 20). The Court subsequently received the authenticated records from the northern district

court.  (D.E. 24).  A *Spears*[2] hearing was conducted on February 18, 2020.  The following representations were made either at the *Spears* hearing or in Plaintiff's amended complaint (D.E. 19).

Plaintiff is 41 years old and weighs 161 pounds.[3] Plaintiff arrived at the Garza West Unit in late September or early October 2017.  Soon after his arrival, Plaintiff advised unidentified prison officials that he was homosexual and that he had received threats to his safety due to his sexual orientation.  Plaintiff explained that Prison officials periodically changed Plaintiff's housing assignment, although it is unclear whether the purpose of this was to address Plaintiff's concerns.  Plaintiff spoke to "the captains" about seeking to be housed separate from other inmates and "they became upset."  (D.E. 25, p. 6).  Plaintiff does not explain why they were upset or whether they were aware of Plaintiff's concerns about being assaulted.  Plaintiff also spoke to a "PREA person," who according to Plaintiff, did not believe Plaintiff's story.  Plaintiff does not allege that prior to the assault he identified or reported to any TDCJ official the particular inmate or inmates who had threatened him.  During the *Spears* hearing, Plaintiff could not recall any of the names or identities of the officials to whom he had reported his concerns about being in danger of attack.  When given the opportunity to amend his complaint or explain his claims at the *Spears* hearing, Plaintiff chose not to name or attempt to identify a specific correctional officer who had notice of the danger to Plaintiff.

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

[3] Plaintiff testified that he could not remember his current height.

Plaintiff was raped by two inmates on October 31, 2017.[4]  These inmates told Plaintiff that he should not say anything to prison officials or else they would kill Plaintiff's mother.  Plaintiff alleges that following the sexual assault, prison officials then blindfolded Plaintiff and took him to a hospital.

Plaintiff testified that prison officials investigated the sexual assault and that an "inspector" wrote a report on the incident.  Plaintiff was not later informed about what happened to his attackers.  Plaintiff subsequently filed a letter with the Court in which he explained that the State Inspector General recorded Plaintiff's account but did not follow up with any further proceedings.  (D.E. 27, pp. 2-3).  Plaintiff also signed a grievance that prison officials had made for him, but he had no knowledge of the results of this grievance.  Plaintiff acknowledged that he did not file a grievance against any particular prison official complaining about that official's failure to protect Plaintiff.  Plaintiff believes that prison officials should have provided him more care and protection from any attacks.

The authenticated records submitted to the Court include voluminous medical records covering the time Plaintiff has spent in TDCJ custody.  In a prison clinical note dated October 30, 2017, Plaintiff reported the details of his sexual assault by two inmates. (D.E. 24-11, p. 34).  It was further reported in the note that Plaintiff was taken to the "hospital for rape kit."   (D.E. 24-11, p. 34).   Plaintiff received a sexual assault examination in a Corpus Christi hospital later that day.  (D.E. 24-11, p. 36).

---

[4] While Plaintiff alleges that the incident occurred on October 31, 2017, a review of the authenticated records submitted to the Court reflects that the incident occurred the day before on October 30, 2017.  (D.E. 24-13, p. 61).

The authenticated records further consist of various reports detailing investigations into the Plaintiff's sexual assault incident, including an Emergency Action Center (EAC) Incident Report dated October 30, 2017, and an Offender Protection Investigation (OPI). (D.E. 24-13, pp. 61-62; D.E. 24-14, pp. 6-12).   In the OPI report dated November 3, 2017, it was noted that multiple OPI's had been initiated on Plaintiff's behalf but that none of the previous OPI's involved sexual abuse.  (D.E. 24-14, p. 11).  On November 7, 2017, the West Garza Unit's Unit Classification Committee (UCC) reviewed the OPI and recommended that Plaintiff be transferred to another unit.  (D.E. 24-14, p. 12).

Bryan Gordy, the Warden of the West Garza Unit, administratively reviewed the EAC Incident Report, the OPI, the UCC's recommendation, as well as other investigative documents.  (D.E. 24-13, pp. 66-72).  In his summary dated November 16, 2017, Warden Gordy noted that sufficient evidence existed to charge two inmates with sexual abuse and that the UCC had recommended the transfer of Plaintiff to another unit.  (D.E. 24-13, p. 71).  Warden Gordy determined that all actions taken by prison officials at the Garza West Unit were in accordance with TDCJ policy and procedure and that there was no "need to change policy or practice to better prevent, detect, or respond to sexual abuse in relation to the incident."   (D.E. 24-13, p. 72).   On November 22, 2017, upon administrative review by the Region IV Director's Office, Regional Director Emil Garza affirmed Warden Gordy's determinations.  (D.E. 24-13, p. 73).

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.   DISCUSSION

### A.   Director Davis

Plaintiff sues Director Davis in part because the assault happened in a TDCJ facility.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304.). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

In this case, Plaintiff attempts to sue Director Davis in her supervisory capacity. He alleges nothing in his amended complaint or at the *Spears* hearing to suggest that she had any personal involvement with regard to the conduct that is the subject of Plaintiff's sexual assault claims.  Plaintiff further alleges nothing to indicate that Director Davis implemented a policy that resulted in Plaintiff's injuries.  Accordingly, it is respectfully recommended that Plaintiff's claim against Director Davis in her supervisory capacity be dismissed with prejudice as frivolous and/or for failure to state a claim.

Plaintiff also claims that Director Davis failed to enforce PREA regulations to prevent the rape.  "While it is true that PREA was enacted in an effort to reduce the occurrence of rapes in prisons by developing and implementing national standards and 'increas[ing] the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape,' nowhere in PREA is there language to suggest that it was created to provide a private cause of action or a federal right that could be enforced in a section

1983 action." *Herndon v. Tanner*, No. 17-02350, 2017 WL 3841836, at *4 (E.D. La. Jul. 26, 2017) (citing 42 U.S.C. §§ 15602, 15605; *Krieg v. Steele*, 599 F. App'x. 231, 232-33 (5th Cir. 2015)).   Because there is no basis for a private suit, the undersigned recommends that Plaintiff's PREA claim against Director Davis be dismissed with prejudice as frivolous and/or for failure to state for relief.

### B.   Other Identified Defendants

When asked at the *Spears* hearing to identify additional parties to hold responsible for the sexual assault, Plaintiff first responded that "[i]t would be the Department of Texas."  (D.E. 25, p. 9).  Plaintiff later added that, when asked if he was trying to sue anybody else other that Director Davis, he seeks to the sue the "State inspector" who investigated the sexual assault incident and wrote a report.  (D.E. 25, pp. 7, 11).[5]  Plaintiff subsequently filed a letter with the Court in which he explained that the State Inspector General recorded Plaintiff's account but did not follow up with any further proceedings. (D.E. 27, pp. 2-3).

#### *(1)   TDCJ*

The Eleventh Amendment bars suit against state entities such as TDCJ … regardless of whether money damages or injunctive relief is sought under § 1983." *See Flaming v. University of Texas Medical Branch*, No. H-15-2222, 2016 WL 727941, *5 (S.D. Tex. Feb. 24, 2016) (citing *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1988) and *Clay v. Texas Women's University*, 728 F.2d 714, 715-16

---

[5] While not indicating that he intended to sue any prison official at the West Garza Unit, Plaintiff stated at the *Spears* hearing that he did not file a grievance against any prison official about his or her failure to protect Plaintiff. (D.E. 25, p. 9).  In a separate order, the undersigned will construe Plaintiff's response as seeking to add the TDCJ and the State Inspector General as defendants in this case.

(5th Cir. 1984)).  Accordingly, it is respectfully recommended that Plaintiff's § 1983 claims against the TDCJ be dismissed as barred by the Eleventh Amendment.

### (2)   State Inspector

Plaintiff seeks to sue the State Inspector General, who purportedly investigated the sexual assault incident occurring on October 30, 2017 and wrote a report.  Plaintiff generally expresses his dissatisfaction with the Inspector General's administrative investigation into the sexual assault incident, focusing on his failure to update the Plaintiff as to the result of his investigation. A review of the authenticated records submitted by the TDCJ reflects that the sexual assault incident was investigated and that, following an OPI and review by the UCC, it was recommended that Plaintiff be transferred to another unit.  (D.E. 24-13, p. 71).

Plaintiff alleges no facts to suggest that the State Inspector General had any personal involvement with the conduct that is the subject of Plaintiff's underlying sexual assault claims.   Furthermore, Plaintiff's dissatisfaction with the State Inspector's administrative investigation does not state an actionable "claim because there is no constitutional guarantee that an inmate's grievance will be resolved in the inmate's favor." *See Smith v. Rich*, No. H-05-4366, 2006 WL 3391454, at *6 (S.D. Tex. Nov. 21, 2006) (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)).  Accordingly, the undersigned recommends that the Plaintiff's claims against the State Inspector be dismissed with prejudice as frivolous and/or for failure to state a claim.

## V.     CONCLUSION

Because Plaintiff has failed to state a cognizable constitutional claim in this action against any of the identified Defendants, it is respectfully recommended that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim for relief and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).   It is respectfully recommended further that this dismissal not be reported as a "strike" for purposes of 28 U.S.C. § 1915(g).

Respectfully submitted this 8th day of April 2020.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).